Judge Mills
delivered the Opinion of the Court.
James Young, the appellant, filed his bill in the court below, charging that the title for a house and lot, No. 198, in Owingsville, was convey. *19 ed by the trustees to the executors of Richard Man* ifee, who conveyed it to Elijah Atchison and Henry D. Atchison jointly; that Elijah Atchison attempted to sell the whole lot to William G. Rice, and Rice, to Joseph A. Hopkins, not by conveyance., but by some contract among themselves, of which he was ignorant, and that said Joseph A. Hopkins, Rice and Elijah Atchison combined together to defraud him, and came to his house and jointly entered into ¡amegotiation to sell to him the house and lot, which by their representations he was induced to purchase, at the sum of $2,465; that each of them, and particularly Hopkins, who was the most active in the sale, fraudulently represented and assured him, that; the complete title to the said house and lot was in the said Elijah Atchison, and that he could convey it, when they and each of them, and particularly Hopkins, as well as Elijah Atchison, well knew the fact to be otherwise, and that said Elijah held an undivided moiety only*; that confiding in the representations, and b.cing ignorant of the title, he was induced by their fraud to accept a deed for the estate from said Elijah Atchison alone. That he had paid all the purchase money, except $973, and that for this he executed to Hopkins, who was the chief seller, one note for $473, payable at a distant day, and another for $500, payable at a day still more distant; that Hopkins had assigned away the first of these notes, whereby rt fell into the hands of Marcus Thomas, and the latter he had assigned to Robert Andrews, and the assignee, Thomas, had brought a suit against him and recovered judgment, in which action he attempted to defend himself at law, and was prevented by the court deciding that his defence was in equity; that before a discovery of the fraud, he sold the said house and lot, and had conveyed with warranty to Elisha Catlet, against whom the said Henry D. Atchison brought his e-jectment, asserting his legal title to the. house and jot, which completely shewed him his situation, and finding out that said H. D. Atchison would recover, to save himself, he bought from Thomas Young, who had bought from said H, D. Atchison, his moiety of the lot, and obtained a conveyance, or? *20 which the eioctment was dismissed; tnat he had also filed his bill in equity against Elijah Atchison, William G. Rice, Joseph A. Hopkins, and J bomas and Andrews, the assignees of the notes, claiming a restoration of half the price of the lot, relying on the same equity now set up; that not intending to abandon his .equity as to the assignees, and supposing that he could recover half the price ox the lot from the other defendants, who sold to him, he discontinued that suit against the assignees, but tried'ut as to Eliiah Atchison, Rice and Hopkins, and recovered against them a ioiut decree for half the price of the lot with interest, but was wholly disappointed in getting any thing by execution on that decree against either; that Rice was hopelessly insolvent; that Eliiah Atchison had left the state and had become insolvent, and ivas now confined for crimes in the state prison of Georgia, and Hopkins had runaway to Indiana, and was also founci to oe insolvent.. He made all these' parties defendants, and prayed for, and obtained, an .ini unction against the judgment of 1 liornas, and prayed for a perpetual imuhction against that judgment, and that the note held by Andrews might be delivered up to be can-celled.
Hopkins answered the bill, denying that he bad bought the lot of Rice, and Rice of Elijah Atchi-son; and insists that he had bought from E. Atchi-son, and Rice from him, and that Rice, when he sold to Young, was indebted to him for part of the purchase money due for the sale of the same lot; and hence one of these notes was' given directly from Young to him, by assent of Rice, and lie surrendered Rice’s note for the purchase money due him. That Rice was also in his debt for another house and lot bought from him, and as part of the price of this latter house and lot, Rice had procured Young to execute the other note, directly to him, which" discharged so much of the purchase money of the latter lot. He denies that he was any party to, or actor in, the sale of the present house and lot, and alleges that Rice alone sold it, and that he was not privy to, or present at, the contract till at the time of closing it, he was called upon by Rice to *21 make the arrangement about accepting tíie noíés from Young, for what was due to him from Rice. He denies going to the house of Young with Rice and E. Atchison, and also denies making any representations to .Young about the title, or that he knew at the time that the title was in any manner defective, and supposed that E. Atchison held the whole title.
Answer of the Tfoun °s’ promissory notes,
decree of the 011GUlt oourt‘
Evidence and facts of tlie °ase’
T|iie assignees answer, denying any knowledge of the consideration of the notes, or any fraud therein, and insist, as they are informed, that Rice alone sold the lot, and not Hopkins, and that as Hopkins took the notes of Young for demands, due to him from Rice, he took them clear of any equity existing between Young and Rice, and particularly one of them, which did not grow out of the price of that house and lot, but was given for another and different lot. They also insist that if the complainant should establish any equity against the notes in their hands; that he had since’purehased the other moity of the lot for the sum of ‡538 only, from H. D. Atchison, and that his equity, consequently, could only extend to that sum, which -was far less than the half of the price, which he was to give, in his first purchase, and indeed, lesss than the amount of the notes enjoined.
Rice and E. Atchison never answered; nor is the insolvency and absence of Hopkins, E. Atchison or Rice disputed.
The court dissolved the injunction, and dismissed the bill with costs and damages; and from that decree Young has appealed to this court.
It is evident, that Young -was induced to believe, by some one of the parties, that the complete title was in E. Atchison. The deed not only declares this; but what is more remarkable, he was induced to accept, though the price was a full one, a warranty against E. Atchison and his heirs alone, and not a general warranty, on which he could have any recourse, in case he was evicted by any other. This could not be supposed to have happened, without the fullest conviction on his part, that the title was *22 complete, and of course, it must be ascertained how he came by this impression* There is a failure on the part of the defendants to show that the contract was with Rice, as they allege, or that Atchison -had first sold to Hopkins, and he to Rice, or lhat there ever had been any sale from Hopkins to Rice, in any manner; before the sale to Young. On the contrary, though Rice lived in the house, and kept a tavern at the time, Hopkins had represented to others, that he and Rice were in partnership in'that tavern. We suppose it clearly proved, that Plop-kins not only went to tile house of Young, which he denies, but that he was the active manager of the sale to Young, and drew all the writings, and what is remarkable, ori ibis point, must have been cognizant of it, as it progressed, for the deed which he drewfrom E. Atchison to Young, is dated one day before the notes were executed. It is also evident, that Hopkins, as well as Rice, did represent to Young, before, and at the sale, that the complete title was in E. Atchison. This is not only proved by others, but also by the testimony of Rice, whose deposition has been taken by both parties.
Two witnesses are not required to overturn the -answer of a defendant, as to a fact of which he professes ignorance only, and calls for proof, but might exist and not be known to him.
Thus far, there appears to be no difficulty, and only one fact is wanting to complete and fix the fraud on Hopkins, and that is, that at the time of the sale to Young, he knew that E. Atchison held but half the title.
Plere, the court below, appears.to rely, for releasing these notes from the consequences, and has supposed that this fact is only proved by one witness, and that is insufficient under the rules of equity, to convict of fraud against the denial of the answers.
While we are not disposed to- controvert the existence of the general rule, that one witness alone, however positive, cannot overturn the denial of a defendant, as to a fact resting within bis knowledge, we are not disposed to admit, that it can, in this ease, bring out the appellees. The answers of the assignees on this point, cannot he relied on for that purpose. They have no knowledge ■ of the facts, and therefore, their, answers cannot be taken as doing more tfian .putting the fact in issue; than assert*- *23 ing their ignorance, and requiring proof. Any satisfactory testimony, therefore, must be held sufficient to establish the fact against such answers. The answer of Hopkins must, therefore, contain the denial, relied on, and the rule will not support it.
. credited on other points, against it.
Corroborat-ingcircum-of the second witness, to ovortarn tÍ!0 auswer’
is no ti-aiie'atiou'oi' fraud in the sale of land, thctitle1' complete, ° where ven-°'™oiet >■ shew that’ the couvey-anees were whereby ren-dec might witl' proper payc^cov-creel the de-fret.
We have already seen that, his answer is discredited by indisputable testimony m other points, material to the controversjq and after that, equity will not apply the rule, and sustain the answer against even one positive witness.
But this witness does not stand entirely without corroboration. The fact that Young was certainly deceived by some one, and tbc arrangement of tbe notes, so as to avoid the effect of the equity, if pos-si ble, agrees with the witness; but what is still more strong, it is proved, that on the day the bargain was completed, an altercation of some warmth took place between Young and Iioplcins, in which Hopkins cautioned Young “not to cut capers about the matter, as there was a secret in-it,” which even Rice himself, seems to have understood as having some allusion to a defect of title, or as intimating that Young by the bargain was caught in some snare, then unexplained. We therefore conceive, that the fraud against Hopkins, the original payee, and assignor of these notes is supported.
It is in effect assumed by the court below, that tile title deeds being matter of record, Young was bound to look into them, and must be presumed to have seen them, as he took a deed for the lot. If this is to excuse from the effects of false representations, -with regard to title, it would obviate the consequences of fraud in nearly all landed controversies, as all our titles arc matters of record. Indeed men prudent and cautious, will examine them before they purchase, as the title papers are the safest guide. But we know that in many cases the credulous and confiding dealers do not do so, but act on seeing bow the possession is held, and io representations of vendors. If these representations are false, the maker of them is, in such case, responsible. It is a bad defence in the mouth of a misrepresentation of facts, to say that the vendee *24 wight have discovered these falsehoods, by using ^ue cau^on and diligence, and therefore he ought to' be excused. It is true, in the case of warranty of personal chattels, the warranty is not supposed to extend to patent defects of the article sold, because the vendee is supposed to have seen their existence and not to have required a warranty against them. But in case of fraudulent misrepresentations, this does not. excuse the fraud, and the case with which the defects can be seen, is given in evidence to prove that the vendee knew at the time, of the defect in relation to which he contends he is cheated. So far only is the evidence of use to the vendee. But we have seen in this case, that Young was, beyond all doubt, ignorant of this defect, and the defendants do not attempt to excuse themselves by alleging he was acquainted with it, but by contending they were ignorant of it also.
An innocent notes6 foun-decl as to him on a valid tion*different from what the maker of the notes re-not'be’drawn into loss by assenting to an arrangement which makef bv° the act of the third per-hlo toTheS1" maker.
But where the payee participates in the fraud by -which the execution of hands. ll?e notf,s was tiated in!us
*24 It has been insisted that if Hopkins is guilty of what he is accused, still the equity arising therefrom will not reach these notes, because they were executed for debts or demands due to Hopkins by Rice, and particularly one of them was executed as tq biopkins, for a consideration not arising out of the house and lot in contest; and it is insisted that according to the case of Morrison vs. Clay, Hard. 421. and numerous cases since decided on the same principle, this will prevent relief on those notes. Wc cannot conceive that the case of Morrison vs. Clay has any analogy to the present,
If Clay, the holder of the notes in that instance, had hi anY manner partook of the deception prae-tisecl on Morrison, the notes in his hands would have been vitiated thereby. The principle m that case *s; ^iat the innocent payee of notes, founded, as to him, on a valid consideration different from the consideration which the maker of the notes received, should not be drawn into ajoss, by assenting to an.arrangement which wronged the maker of the notes by the act of a third person, who was responsible to Morrison.
In this controversy we conceive it makes no dif-ferenc© what wag the consideration of these notes *25 as to Hopkins; for by bis fraudulent misrepresentations, lie caused Young to give them, and the equity will attach to the notes, although he took them in discharge of debts ever so fair and valuable.
Consideration.
Purchaser of the entire estate of wen-dor owning bat a moiety, fraudulently representing wh Eslían 6 be relieved to ®^atl0nm0'
Vendor in ?ucl? case mitteef a°m" fraud in the CuyJ‘ot benefit of or of incum-brancesmade ^'^fter-1'6 wards pm-chased in by vendee< vendee’s purchase of the other moiety of the estate —As might be the law in case of innocent mistake,
The payee of an obligation cannot be permitted, as it were to smuggle into the demand a good consideration, by fraud, and thus preserve it. This equity must affect and reach the notes in the hands of the assignees.
The remaining question is, what deduction Young is entitled to, whether can he get compensation to the amount of half the estate, or, as he has purchased the share of Henry D. Atchison for less, is he only entitled to relief to that extent? He is not claiming a rescission of contract. That he cannot do, because he had, by sale, disabled himself from rescinding before he discovered the fraud. His bill, therefore, may be assimilated to an action at law,' for compensation for the fraud, and in such action if the difference between the thing actually sold, and that which was represented to be sold, can be accurately measured by the standard of the stipulated, it is a good criterion of damages.
This must have been the criterion if Young had not since acquired the title of Henry D. Atchison for a less sum than half the stipulated value of the estate sold. Can Hopkins, or the assignees, give this fact in evidence, to mitigate the damages, to which Young was subjected by the fraud of Hopkins? There may be cases where equity will consider the vendee, who has acquired outstanding incum-branccs, or by his money cured defects in title, as trustee for the vendor, and allow such acquisition or purchase to enure to his benefit. But all the cases of that kind which have come under the observation of the court, embrace incumbrances, or outstanding titles known at the time of the contract, and understood byxthe parties, or at farthest embrace the innocent mistakes of the vendor. If these are remedied by the money or acts of the vendee, such acts may perhaps be claimed by the vendor, to he applied to his benefit. But we have discovered no case where the perpetrator of a fraud has ever *26 been permitted to make his vendee a trustee to cover or lessen the consequences of the fraud. If this outstanding title of H. D. Atchison, which extended exactly to half the estate, had been stipulated against by the vendors; or if we could reduce the representations of Hopkins to a mere innocent mistake on iiis part, which he himself believed, we might be disposed to measure the injury occasioned by the breach of his stipulation, or the consequences of his mistake, by the price given by Young to acquire the residue of the title. Rut there is no principle on which Ve can thus lessen the consequences of an act infected by turpitude of motive, nor can any person guilty of fraud, claim that he is cestui que trust, of the person defrauded, and that he has a right to be substituted in the place of the defrauded person, if the latter, by prudent and cautious measures, shall be able to extricate himself from the consequences of the fraud. Such successful achievement must, in such case, he set down solely to the benefit of himself and not of the party who defrauded him.
Decision.
Triplett, for appellant; Crittenden and Wickliffe, for appellees.
It follows, therefore, that Young is entitled to a deduction of half the price of the estate, and that he is entitled to a perpetual injunction against the judgment at law, with costs, and to a surrender of the note held by Andrews, to be cancelled, and for the amount so injoined and surrendered, he ought to compelled to enter a credit on his former decree obtained by him against Hopkins, Rice and E. Atchison.
Decree reversed with costs, and cause remanded for a decree to be entered in conformity to this opinion,